# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| GEOFFREY MOORE, on behalf of himself and all others similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>ORACLE HEALTH, INC.,<br><br>                      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Geoffrey Moore ("Plaintiff") through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Oracle Health, Inc. ("Oracle" or "Defendant"), alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiff.

## **INTRODUCTION**

1.      This class action arises from Defendant's failure to properly secure and safeguard Plaintiffs' and Class Members' personally identifiable information ("PII") and protected health information ("PHI" and collectively with PII, "Private Information") from cybercriminals.

2.      According to a notice sent to impacted Oracle customers, on or about February 20, 2025, Oracle Health learned that cybercriminals had gained access to patient information that was "on an old legacy Cerner server that was not yet migrated to the Oracle Cloud."[1]

---

[1] *See* Bleeping Computer, *Oracle Health breach compromises patient data at US hospitals* https://www.bleepingcomputer.com/news/security/oracle-health-breach-compromises-patient-data-at-us-hospitals/ (last visited April 17, 2025).

3.     Oracle revealed that a cybercriminal used compromised customer credentials to breach the server sometime after January 22, 2025, and copied data including patient Private Information, to a remote server (the "Data Breach").[2]

4.     Upon information and belief, impacted hospitals are now being extorted by a threat actor named "Andrew," who is demanding millions of dollars in cryptocurrency not to leak or sell the stolen data and who has created websites about the Data Breach to pressure the hospitals into paying the ransom.[3]

5.     This massive Data Breach has been revealed just a few days after it became known that another cybercriminal known as "rose87168" has accessed Oracle Cloud's "federated login infrastructure" and allegedly stolen approximately 6 million sensitive records potentially affecting more than 140,000 Oracle Cloud tenants worldwide.[4]

6.     Oracle has been denying both breaches despite hackers offering proof of the sensitive data exfiltrated from Oracle's networks and/or servers, intentionally and/or negligently leaving millions of customers at risk.[5]

7.     Oracle's lack of transparency obfuscates the nature of the Data Breach and the threat it poses. Oracle has not disclosed how many people were impacted, how the Data Breach happened, how long the Data Breach lasted before Defendant discovered it, exactly what information was compromised,

---

[2] *Id.*

[3] *Id.*

[4] *See* USDM Life Sciences, *Oracle Breaches: What Happened and What's Next,* https://usdm.com/resources/blogs/oracle-health-breach-what-life-sciences-cybersecurity-leaders-need-to-know-and-do-now (last visited April 17, 2025).

[5] *See Oracle Health suffers major breach, hospital data potentially exposed*, https://www.techradar.com/pro/security/oracle-health-suffers-major-breach-hospital-data-potentially-exposed (last visited April 17, 2025).

8.      Oracle's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII/PHI.

9.      Oracle's denials of the Data Breach and its inadequate response to the cyberattack exacerbate the risk for the victims because 1) Oracle has not provided any notice of the Data Breach to Plaintiffs or Class Members; 2) Oracle has not informed Plaintiffs and Class Members whether it was able to fully contain or end the cybersecurity threat to their patient data, leaving victims to fear that their Private Information maintained by Oracle is not secure; and 3) Oracle has not disclosed the causes and the details of how the Data Breach occurred.

10.     There has been no assurance offered by Oracle that all personal data or copies of data have been recovered or destroyed, or that it has adequately enhanced its data security practices to avoid a similar breach of its computer systems and networks in the future.

11.     Oracle knew or should have known that each victim of the Data Breach deserved prompt and adequate notice of the Data Breach and assistance in mitigating the effects of PII/PHI misuse.

12.     In failing to adequately protect its patients' information, adequately notify them about the breach, and obfuscating the nature of the breach, Oracle violated state law and harmed an unknown number of its current and former patients.

13.     Plaintiff and the Class are victims of Oracle's negligence and inadequate cybersecurity measures. Specifically, Plaintiff and members of the proposed Class trusted Oracle with their PII/PHI. But Defendant betrayed that trust when Oracle t failed to properly use industry-standard security practices to prevent the Data Breach, and continues to fail to provide Notice of the Data Breach.

14. Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII/PHI of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PH—rendering it an easy target for cybercriminals.

15. The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

16. Plaintiff Geoffrey Moore is a natural person and citizen of Murrieta, California, where he intends to remain.

17. Defendant Oracle Health, Inc. is a Delaware corporation with its headquarters located at 8779 Hillcrest Road, Kansas City, Missouri 64138.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are at least 100 putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Defendant.

19. This Court has personal jurisdiction over Defendants because Defendant maintains its principal place of business in this District and does substantial business in this District.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## **BACKGROUND**

### *Defendant Collected and Stored the PII/PHI of Plaintiff and the Class*

21.     Defendant Oracle Health, formerly known as Cerner Corporation, is a healthcare software-as-a-service (SaaS) company offering electronic health record ("EHR") and business operations systems to hospitals and healthcare organizations.[6]

22.     Defendant's parent Oracle Corporation acquired the medical records giant Cerner Corporation for $28.3 billion in 2022.[7]

23.     On information and belief, Oracle accumulates highly private PII/PHI of its patients, including information protected by HIPAA.

24.      Indeed, as a condition of receiving medical services from Oracle's customers in the healthcare industry, patients are required to entrust it with highly sensitive personal and health information. Without the required submission of Private Information from Plaintiffs and Class Members, Defendant could not perform the services it provides.

25.     On information and belief, in the ordinary course of its business, Oracle maintains the PII/PHI of consumers and their patients, including but not limited to:

    a.   Name, address, phone number and email address;

    b.   Date of birth;

    c.   Demographic information;

    d.   Social Security number;

    e.   Information relating to individual medical history;

    f.   Information concerning an individual's doctor, nurse or other medical providers;

    g.   Health insurance information;

    h.   Clinical testing information and results;

    i.   Other information that Defendant may deem necessary to provide services and care.

---

[6] *See* https://www.oracle.com/health/
[7] *See* https://www.oracle.com/corporate/; https://www.cnbc.com/2025/03/06/oracles-federal-electronic-health-record-suffered-nation-wide-outage-.html (last visited April 17, 2025).

26.     In collecting and maintaining its patients' PII/PHI, Oracle agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII/PHI.

27.     Indeed, Oracle states in its Privacy Policy: "Oracle has implemented and will maintain technical and organizational measures designed to prevent accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to Services Personal Information. These measures, which are generally aligned with the ISO/IEC 27001:2013 standard, govern all areas of security applicable to the Services, including physical access, system access, data access, transmission, input, security oversight, and enforcement."[8]

28.     Likewise, Seema Verma, the executive vice president and general manager of Oracle Health and Life Sciences, stated, "Cyberattacks represent an imminent and existential threat to healthcare worldwide" and "[o]ur top priority is helping to keep our customers and their patients safe from the debilitating impacts of cyber-terrorism."[9]

29.     Despite recognizing its duty to do so, on information and belief, Oracle has not implemented reasonable cybersecurity safeguards or policies to protect the PII/PHI of its current and former patients, or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Oracle leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' PII/PHI.

***Defendant Failed to Safeguard the PII/PHI of Plaintiff and the Class***

30.     Plaintiff is a patient of Oracle. Although he has not received Notice of the Data Breach, which is unsurprising giving Defendant's attempts to obfuscate the matter, he is not able to access his records or billing.

---

[8] *See* https://www.oracle.com/legal/privacy/services-privacy-policy/#1-4 (last visited April 17, 2025).
[9] *See Oracle Protect Healthcare Customers Against Cyberattacks* (published April 23, 2024) https://www.oracle.com/news/announcement/oracle-protects-healthcare-customers-against-cyberattacks-2024-04-23/ (last visited April 17, 2025).

31.    As described herein, Defendant detected unauthorized access to its legacy Cerner servers on or around February 20, 2025, with such unauthorized access starting on or after January 22, 2025.

32.    By way of background, after being acquired by Oracle Corporation in 2022, Cerner was merged into Oracle Health, with its systems migrated to Oracle Cloud.[10]

33.    Oracle's security failures led to cyberattack that compromised its legacy Cerner data migration servers that store patient data for multiple US healthcare organizations and hospitals.[11]

34.    Oracle has not sent Data Breach notices to Plaintiffs and Class Members. In fact, it was reported that Oracle is telling hospitals that it will not be notifying patients directly and that it is the hospitals' responsibility to determine if the stolen data violates HIPAA laws and whether they are required to send notifications.[12]

35.    Furthermore, rather than providing written reports, Oracle Health has reportedly directed customers to communicate only with its Chief Information Security Office (CISO) over the phone and not via email, leaving hospitals without proper documentation or clear guidance on responding to the Data Breach.[13]

36.    Upon information and belief, all formal communication regarding the Data Breach has been sent on plain paper rather than Oracle letterhead, such that Oracle has not formerly acknowledged the breach as expected.[14]

---

[10] *See* Bleeping Computer, *Oracle Health breach compromises patient data at US hospitals* (March 28, 2025), https://www.bleepingcomputer.com/news/security/oracle-health-breach-compromises-patient-data-at-us-hospitals/ (last visited April 17, 2025).
[11] *Id.*
[12] *See* Bleeping Computer, *Oracle Health breach compromises patient data at US hospitals* https://www.bleepingcomputer.com/news/security/oracle-health-breach-compromises-patient-data-at-us-hospitals/ (last visited April 17, 2025).
[13] *Id.*
[14] *Id.*

37.     Upon information and belief, Oracle has likewise failed to report the Data Breach to the U.S. Department of Health and Huiman Services.[15]

38.     For an unknown period of time, cybercriminals hacked Defendant's network and accessed extremely sensitive information, including social security numbers and protected health information.

39.     Defendant obfuscates the nature of the breach, failing to clearly inform the public how many people were impacted, how the Data Breach happened, how long the Data Breach lasted before Defendant discovered it, exactly what information was compromised, or why Defendant has created clear guidelines for its hospitals to notify victims that cybercriminals had gained access to their highly private information.

40.     Defendant continues to keep Plaintiff and the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

41.     Despite its duties to safeguard PII/PHI, Defendant did not in fact follow industry standard practices in securing current and former patients' PII/PHI, as evidenced by the Data Breach.

42.     Oracle says that the threat actor used compromised customer credentials to breach the servers sometime after January 22, 2025, and copied data to a remote server.[16]

43.     Oracle has not disclosed to the public that on or around September 21, 2024, a threat actor claimed to have leaked 4,002 rows of employee information from Oracle. A copy of the threat actors post on the dark web is below.[17]

---

[15] *See Breach Portal: Notice to the Secreaty of HHS Breach of Unsecured Protected Health Information,* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited April 17, 2025).
[16] *See* Bleeping Computer, *Oracle Health breach compromises patient data at US hospitals* (March 28, 2025), https://www.bleepingcomputer.com/news/security/oracle-health-breach-compromises-patient-data-at-us-hospitals/ (last visited April 17, 2025).
[17] *See Data Breach Alert, FalconFeeds.io* (Sept. 21, 2024) https://x.com/FalconFeedsio/status/1837507607701098829 (last visited April 17, 2025).

44.     The compromised data includes first and last names, job titles, company name, email addresses, personal addresses and company addresses, and more, further suggesting that Defendant did not employee industry-standard policies and procedures safeguarding its employees' data.



45.     Therefore, on information and belief, the Data Breach was effectuated by means of the compromised credentials of its own employees.

46.     On information and belief, Defendant has offered no help to victims like Plaintiffs and Class Members.

47.     Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII/PHI is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

48.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII/PHI. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff and the Class's financial accounts.

49.     On information and belief, Defendant failed to adequately train its IT and data security patients on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' PII/PHI. Defendant's negligence is evidenced by its failure to prevent the Data Breach, and to stop cybercriminals from accessing its employees credentials and the PII/PHI of patients it stored in its network.

***Defendant Knew—or Should Have Known—of the Risk of a Data Breach***

50.     It is well known that PII/PHI, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

51.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

52.     In fact, out of twenty industries that were analyzed, the healthcare industry is number eleven for highest count of ransomware attacks from January 2022 to January 2023.[18]

53.     In 2024, a 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[19]

54.     According to a report from the U.S. Department of Health and Human Services the healthcare industry has seen a 239% increase in large breaches involving hacking and a 278% increase in ransomware reported in the past four years. Even in the face of this growing threat, healthcare providers only spend about 8% of their IT budgets on security, well below the cross-industry average.

55.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack. As one report explained, "[e]ntities like smaller

---

[18] *Ransomware Statistics: Who is targeted the most?* Nord Locker, https://nordlocker.com/ransomware-attack-statistics/ (last visited March 24, 2025).
[19] *2024 Data Breach Annual Report*, Identity Theft Resource Center, https://www.idtheftcenter. org/publication/2024-data-breach-report/ (last visited March 24, 2025).

municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[20]

56.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information: "Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care."[21]

57.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in the plastic surgery industry, including Defendant.

58.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII/PHI private and secure, Defendant failed to take appropriate steps to protect the PII/PHI of Plaintiff and Class Members from being compromised.

59.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included extortion and threatening to release stolen data.

---

[20] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, Law360 (published Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited March 24, 2025).
[21] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last (last visited April 17, 2025).

60.     Accordingly, Plaintiffs and Class Members believe that their Private Information was or will be sold on the dark web, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

61.     Data breaches are so prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

62.     As a healthcare services vendor, Oracle knew, or should have known, the importance of safeguarding its clients' patients' Private Information, including PHI, entrusted to it, and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on Oracle's clients' patients as a result of a breach. Oracle failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

***Plaintiff's Experience and Injuries***

63.     Plaintiff is a patient of Defendant and a data breach victim. Plaintiff is completely locked out of his account and unable to access his medical records or billing information.

64.     As a condition of receiving services, Defendant required Plaintiff to provide his PII/PHI, including at least his name, date of birth, Social Security Number, and health information.

65.     Plaintiff provided his PII/PHI to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

66.     As a result of its inadequate cybersecurity measures and data destruction policies, Defendant exposed Plaintiff's PII/PHI for theft by cybercriminals and sale on the dark web.

67.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him—or notify him at all—about the Data Breach.

68.     Plaintiff suffered actual injury from the exposure of his PII/PHI —which violates his rights to privacy.

69.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendant was required to adequately protect.

70.     As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate its impact, including but not limited to researching the Data Breach, reviewing credit card and financial account statements and monitoring his credit information.

71.     Plaintiff has already spent many hours and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII/PHI was exposed. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how the exposure and loss of his Personal Information, including possibly his Social Security number, will impact him. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

72.     Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII/PHI being placed in the hands of unauthorized third parties. This injury is worsened by Defendant's failure to promptly inform Plaintiff about the Data Breach.

73.     Once an individual's PII/PHI is for sale and access on the dark web, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[22] Plaintiff's

---

[22] *What do Hackers do with Stolen Information,* AURA, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited March 44, 2025).

name, date of birth, Social Security number, and medical information were compromised as a result of the Data Breach.

74.     Plaintiff has a continuing interest in ensuring that his PII/PHI, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

75.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII/PHI that can be directly traced to Defendant.

76.     As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

    a.  The loss of the opportunity to control how their PII/PHI is used;

    b.  The diminution in value of their PII/PHI;

    c.  The compromise and continuing publication of their PII/PHI;

    d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.  Delay in receipt of tax refund monies;

g. Unauthorized use of stolen PII/PHI; and

h. The continued risk to their PII/PHI, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII/PHI in its possession.

77. Stolen PII/PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up to $1,000.00 depending on the type of information obtained.

78. The value of Plaintiff's and the proposed Class's PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

79. Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

80. It can take victims years to spot identity or PII/PHI theft, giving criminals plenty of time to use that information for cash.

81. One such example of criminals using PII/PHI for profit is the development of "Fullz" packages.

82. Cyber-criminals can cross-reference two sources of PII/PHI to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

83.     The development of "Fullz" packages means that stolen PII/PHI from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

84.     Defendant disclosed the PII/PHI of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII/PHI of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, extortion, and exposure of stolen PII/PHI.

85.     Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest opportunity to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

*Consumers Prioritize Data Security*

86.     In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[23] Therein, Cisco reported the following:

a.      "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[24]

b.      "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[25]

c.      89% of consumers stated that "I care about data privacy."[26]

d.      83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[27]

e.      51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[28]

f.      75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[29]

---

[23] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[24] *Id*. at 3.
[25] *Id*.
[26] *Id*. at 9.
[27] *Id*.
[28] *Id*.
[29] *Id*. at 11.

*Defendant Failed to Adhere to FTC Guidelines*

87.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII/PHI.

88.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

  a.    protect the personal customer information that they keep;

  b.    properly dispose of personal information that is no longer needed;

  c.    encrypt information stored on computer networks;

  d.    understand their network's vulnerabilities; and

  e.    implement policies to correct security problems.

89.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

90.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

91.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

92.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII/PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

93.     Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees regarding cybersecurity; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

94.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

95.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical

Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

96.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

***Defendant Violated HIPAA***

97.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[30]

98.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

- failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

- failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

- failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

- failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

---

[30] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

- failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

- failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

- failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

- failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

- failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

99.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

100.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following classes:

**Nationwide:** All individuals residing in the United States whose PII/PHI was compromised in the Data Breach of Oracle's network.

**California:** All individuals residing in the California whose PII/PHI was compromised in the Data Breach of Oracle's network.

101.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including its staff and immediate family.

102.     Plaintiff reserves the right to amend the class definition.

103.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

104.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements.

105.     **Numerosity.** The Class members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least thousands of members.

106.     **Commonality and Predominance.** Plaintiff's and the Class Members' claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

     a.     if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

     b.     if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.   if Defendant was negligent in maintaining, protecting, and securing PII/PHI;

d.   if Defendant breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

e.   if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.   if Defendant's Breach Notice was reasonable;

g.   if the Data Breach caused Plaintiff and the Class injuries;

h.   what the proper damages measure is; and

i.   if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

107.   **Typicality.** Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

108.   **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

109.   **Appropriateness.** The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

110.     **Ascertainability.**  All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some victims and sent them data breach notices.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

111.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

112.     Plaintiff and the Class entrusted their PII/PHI to Defendant on the premise and with the understanding that Defendant would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

113.     Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

114.     Defendant has full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

115.     Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff's and Class Members' PII/PHI.

116.     Defendant owed to Plaintiff and Class Members at least the following duties to:

a.     exercise reasonable care in handling and using the PII/PHI in its care and custody;

      b.      implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

      c.      promptly detect attempts at unauthorized access;

      d.      notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII/PHI.

117. Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

118. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

119. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

120. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII/PHI, a necessary part of receiving services from Defendant.

121. The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendant holds vast amounts of PII/PHI, it was inevitable

that unauthorized individuals would attempt to access Defendant's databases containing the PII/PHI —whether by malware or otherwise.

122.    PII/PHI is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff's and Class Members' and the importance of exercising reasonable care in handling it.

123.    Defendant improperly and inadequately safeguarded the PII/PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

124.    Defendant breached these duties as evidenced by the Data Breach.

125.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff 'and Class Members' PII/PHI by:

> a.    disclosing and providing access to this information to third parties and
>
> b.    failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

126.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII/PHI of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury.

127.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

128. Defendant has admitted that the PII/PHI of Plaintiff and the Class was accessed by an intruder to its systems.

129. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

130. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Nationwide Class)

131. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

132. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII/PHI.

133. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC

publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive PII/PHI.

134.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

135.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII/PHI Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

136.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

137.    But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

138.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

139.    Defendant's violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

140.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### THIRD CAUSE OF ACTION
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

141.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

142.    Defendant offered to provide services to Plaintiff and members of the Class if, and in exchange, Plaintiff and members of the Class provided Defendant with their PII/PHI.

143.    In turn, Defendant agreed it would not disclose the PII/PHI it collects to unauthorized persons.

144.    Plaintiff and the members of the Class accepted Defendant's offer by providing PII/PHI to Defendant in exchange for Defendant's services.

145.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

146.    Plaintiff and the members of the Class would not have entrusted their PII/PHI to Defendant in the absence of such an agreement with Defendant.

147.    Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusions into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

      a.    Failing to properly safeguard and protect Plaintiff's and members of the Class's PII/PHI;

b.      Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c.      Failing to ensure the confidentiality and integrity of electronic PII/PHI that Defendant created, received, maintained, and transmitted.

148.    The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

149.    Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

150.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

151.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

152.    Defendant failed to advise Plaintiff and members of the Class of that there was not one but two Data Breaches, and failed to send Notice to the victims promptly and sufficiently.

153.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

154. Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

155. Plaintiff, on behalf of himself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

156. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

157. Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

158. Upon information and belief, Defendant funds its data security measures from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

159. As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

160. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased services from Defendant and/or its agents and in so doing provided Defendant or its agents with their PII/PHI. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII/PHI protected with adequate data security.

161. Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII/PHI of Plaintiff

and Class Members for business purposes.

162. Plaintiff and Class Members conferred a monetary benefit on Defendant, by paying Defendant as part of Defendant rendering services, a portion of which was to have been used for data security measures to secure Plaintiff's and Class Members' PII/PHI, and by providing Defendant with their valuable PII/PHI.

163. Defendant was enriched by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII/PHI. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid the data security obligations at the expense of Plaintiff and the Class by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

164. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

165. Defendant acquired the monetary benefit and PII/PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

166. If Plaintiff and Class Members knew that Defendant had not secured their PII/PHI, they would not have agreed to provide their PII/PHI to Defendant either directly or through their own financial institutions.

167. Plaintiff and Class Members have no adequate remedy at law.

168. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the

opportunity how their PII/PHI is used; (ii) the compromise, publication, and/or theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII/PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII/PHI in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII/PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

169.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm.

170.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

### FIFTH CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Nationwide Class)**

171.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

172.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

173.    Defendant owed a duty to Plaintiff and Class Member to keep their PII/PHI confidential.

174.    The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII/PHI, including sensitive photographs, is highly offensive to a reasonable person. It constitute an invasion of privacy both by disclosure of nonpublic facts, and intrusion upon seclusion.

175.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII/PHI constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

176.    Defendant's failure to protect Plaintiff's and Class Members' PII/PHI acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

177.    Defendant knowingly did not notify Plaintiff's and Class Members in a timely fashion about the Data Breach.

178.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII/PHI, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

179.    As a proximate result of Defendant's acts and omissions, the PII/PHI of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and rediscosure without authorization, causing Plaintiff and the Class to suffer damages.

180.     Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII/PHI is still maintained by Defendant with their inadequate cybersecurity system and policies.

181.     Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their PII/PHI. A judgment for monetary damages will not end Defendant's inability to safeguard the PII/PHI of Plaintiff and the Class.

182.     Plaintiff and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII/PHI.

183.     Plaintiff and Class Members seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Nationwide Class)**

184.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

185.     Given the relationship between Defendant and Plaintiff and the Class Members, where Defendant became guardian of Plaintiff's and Class Members' PII/PHI, Defendant became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII/PHI; (2) to timely notify Plaintiff and Class Members of the Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

186.     Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII/PHI.

187.     Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class members

(or their third-party agents) would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII/PHI had they known the reality of Defendant's inadequate data security practices.

188.    Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII/PHI.

189.    Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach within a reasonable and practicable time period.

190.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**SEVENTH CAUSE OF ACTION**
**Breach of Confidence**
**(On Behalf of Plaintiff and the Nationwide Class)**

191.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

192.    Plaintiffs and Class Members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and ultimately accessed and acquired in the Data Breach.

193.    As a healthcare service provider, Defendant has a special relationship with its customers' patients, including Plaintiffs and Class Members. Because of that special relationship, Defendant was provided with and stored Plaintiffs' and Class Members' Private Information and had a duty to maintain such Information in confidence.

194.    Patients like Plaintiffs and Class Members have a privacy interest in personal medical and other matters, and Defendant had a duty not to disclose such matters concerning its customers' patients.

195.    As a result of the parties' relationship, Defendant had possession and knowledge of highly sensitive and confidential PHI and PII belonging to Plaintiffs and Class Members, information that was not generally known.

196.    Plaintiffs and Class Members did not consent nor authorize Defendant to release or disclose their Private Information to an unknown criminal actor.

197.    Defendant breached its duty of confidence owed to Plaintiffs and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiffs' and Class Members' Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the Breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its customers' patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class Members' Private Information to a criminal third party.

198.    Plaintiffs and Class Members did not consent nor authorize Defendant to release or disclose their Private Information to an unknown criminal actor.

199.    Defendant breached its duty of confidence owed to Plaintiffs and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that

resulted in the unauthorized access and compromise of Plaintiffs' and Class Members' Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the Breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its customers' patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class Members' Private Information to a criminal third party.

200.    Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION
**Violation of the California Consumer Privacy Act**
**Cal. Bus. & Prof. Code §§ 17000 *et seq*.**
**(On Behalf of Plaintiff and the California Class)**

185.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

186.    Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII/PHI of Plaintiff and the California Subclass Members. As a direct and proximate result, Plaintiff's and the California Subclass Member' nonencrypted and nonredacted PII/PHI was subject to unauthorized access and exfiltration, theft, or disclosure.

187. Defendant is a "business" under the meaning of Civil Code § 1798.140 because Defendant is a "corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners" that "collects consumers' personal information" and is active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

188. Plaintiff and California Subclass Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards PII/PHI by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold PII/PHI, including Plaintiff's and the California Subclass Members' PII/PHI. Plaintiff and the California Subclass Members have an interest in ensuring that their PII/PHI is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

189. Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiff believe such cure is not possible under these facts and circumstances—then Plaintiff intend to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

190. As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

191. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

## NINTH CAUSE OF ACTION
### Violation of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17000 *et seq*.
### (On Behalf of Plaintiff and the California Class)

192. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

193. Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

194. Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"); California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.,* and other state data security laws.

195. Defendant stored the PII/PHI of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's PII/PHI secure so as to prevent the loss or misuse of that PII/PHI.

196. Defendant failed to disclose to Plaintiff and the Class that their PII/PHI was not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that Defendant had secured their PII/PHI. At no time were Plaintiff and the Class on notice that their PII/PHI was not secure, which Defendant had a duty to disclose.

197. Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted PII/PHI.

198. Had Defendant complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the data breach.

199.     Defendant's conduct was unlawful, in that it violated the CCPA.

200.     Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act.

201.     Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

202.     Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII/PHI.

203.     Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

204.     Instead, Defendant made the PII/PHI of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

205.    As a result of those unlawful and unfair business practices, Plaintiff and the Class suffered an injury-in-fact and have lost money or property.

206.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

207.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

208.    Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

<u>**TENTH CAUSE OF ACTION**</u>
**Violation of the California Confidentiality of Medical Information Act**
**Cal. Civ. Code §§ 56 *et seq*.**
**(On Behalf of Plaintiff and the California Class)**

209.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

210.    Under California's Confidentiality of Medical Information Act ("CMIA"), "persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved . . . [and it] is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information. Cal. Civ. Code Div. 1, Pt. 2.6.

211.    Furthermore, "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Cal Civ Code § 56.101(a).

212.    And "[a]ny provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys,

or disposes of medical information shall be subject to the remedies and penalties provided[.]" Cal. Civ. Code § 56.101(a).

213. Thus, "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her[.]" Cal. Civ. Code § 56.36(b).

214. Here, Defendant is subject to the CMIA because Defendant is a provider of health care, and Defendant created, maintained, preserved, stored, abandoned, destroyed, and/or disposed of medical information regarding Plaintiff and the California Subclass.

215. But Defendant was negligent because it failed to take reasonable precautions to ensure its data systems were protected. As a result of Defendant's negligence, an unauthorized third-party viewed and obtained the medical information of Plaintiff and the California Subclass.

216. As such, Defendant is therefore liable for damages in an amount to be determined at trial, but not less than the statutorily provided nominal damages of $1,000 for each class member.

### ELEVENTH CAUSE OF ACTION
**Violation of the California Customer Records Act**
**Cal. Civ. Code §§ 1798.80 *et seq*.**
**(On Behalf of Plaintiff and the California Class)**

201. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

202. Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the

breach], if the personal information was, *or* is reasonably believed to have been, acquired by an unauthorized person." *Id* (emphasis added).

203.    The Data Breach constitutes a "breach of the security system" of Defendant.

204.    An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

205.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class but waited approximately two months to notify them. Given the severity of the Data Breach, two months was an unreasonable delay.

206.    Defendant's unreasonable delay prevented Plaintiff and the Class from taking appropriate measures from protecting themselves against harm.

207.    Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

208.    Plaintiff and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

<u>**TWELFTH CAUSE OF ACTION**</u>
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

209.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

210.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

211.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff

alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

212. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

      b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

      c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

      d. Defendant's breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

213. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

214. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

215. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

216. If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

217. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of all others similarly situated, prays for relief as follows:

a. For an order certifying the Class, and naming Plaintiff as representatives of the Class, and Plaintiff's attorneys as Class Counsel;

b. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c. For damages in an amount to be determined by the trier of fact;

d. For an order of restitution and all other forms of equitable monetary relief;

e. Declaratory and injunctive relief as described herein;

f. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses as otherwise allowed by law;

g. Awarding pre- and post-judgment interest on any amounts awarded; and

h. Awarding such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and on behalf of the putative Class, demands a trial by jury on all claims so triable.

Dated: April 18, 2025           By: */s/ Brandon M. Wise*

Brandon M. Wise - MO Bar # 67242
PEIFFER WOLF CARR KANE
CONWAY & WISE
One US Bank Plaza, Suite 1950
St. Louis, MO 63101

Ph: (314) 833-4825
bwise@peifferwolf.com


Raina C. Borrelli (*pro hac vice* anticipated)
STRAUSS BORRELLI, PLLC
980 N. Michigan Ave., Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiff and the Proposed Class*